**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                              CIVIL NO. 04-72197
                                                        HON. LAWRENCE P. ZATKOFF
                                                        MAGISTRATE JUDGE R. STEVEN WHALEN

ELENA SZILVAGYI, DAVID J.
SZILVAGYI, PATERNO M. DOREZA,
MANUELA DOREZA, PRIME CARE
SERVICES, INC., and SU-PRA
ENTERPRISES, INC., ET. AL.

      Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 25, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment filed on July 8, 2005 [No. 108]. Defendants have responded to Plaintiff's motion, and Plaintiff has replied to the response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore,

pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED IN PART.

## II. BACKGROUND

Defendant Elena Szilvagyi is the sole owner, president and chief executive officer of Defendant company Prime Care Services. Defendant David Szilvagyi, Elena's husband, works for Prime Care. Prime Care provides home health care services; eligible costs are reimbursed by Medicare. In 1994 the Szilvagyis arranged to have a personal residence built at 5544 Elizabeth Court, Clarkston, Michigan. Plaintiff claims that the builder, Karl Lundquist, and others associated with the project were placed on Prime Care's payroll, and their wages were wrongfully submitted to Blue Cross/Blue Shield and Medicare for reimbursement in the years 1995 through 1998.

On November 4, 2003, the Szilvagyis and Prime Care were indicted by a federal grand jury and charged with Conspiracy to Commit Health Care Fraud and Mail Fraud (18 U.S.C. § 371), Health Care Fraud (18 U.S.C. § 1347), and Mail Fraud (18 U.S.C. § 1347). On February 10, 2004, the Szilvagyis and Prime Care pled guilty to Conspiracy to Commit Health Care Fraud and Mail Fraud. The other counts were dropped. At sentencing, the Szilvagyis sought to withdraw their guilty pleas, arguing that they were pressured into pleading by their attorneys. The district court did not allow them to withdraw their pleas; Elena was sentenced to 48 months and David was sentenced to 30 months. They were also ordered to pay restitution of $865,645: $29,321 to Blue Cross Blue/Blue Shield and 836,324 to Medicare. They have appealed their convictions.

On June 14, 2004, Plaintiff filed the present suit for treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. Plaintiff seeks treble damages of $2,508,972

(based on the judgment of 836,324), and a $10,000 penalty for each false claim, for a total of $2,548,972.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

Plaintiff seeks summary judgment against the Szilvagyis and Prime Care for Counts I, II, and III.  Count I concerns the presenting of false claims, Count II concerns the making of false records in support of false claims, and Count III concerns conspiracy to present false claims.  The Szilvagyis have responded to Plaintiff's Motion.  Prime Care has not, but the arguments raised by the Szilvagyis largely apply to Prime Care as well.

**A.      Liability under the False Claims Act**

Plaintiff claims that the Szilvagyis and Prime Care are statutorily estopped from contesting their liability for these Counts, since they pled guilty to Conspiracy to Commit Health Care Fraud and Mail Fraud.  The FCA provides that:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(d).

The Szilvagyis raise two main arguments in response.

*1.      The Applicability of Collateral Estoppel*

The Szilvagyis first argue that since they pled guilty, they had no motivation to fully and fairly litigate the issues, and thus collateral estoppel should not apply.  This argument is without merit.  Collateral estoppel applies "whether the conviction is obtained by jury verdict or through a guilty plea."  *U.S. v. Cripps*, 460 F. Supp. 969, 975 (E.D. Mich 1978).  In addition, the language of § 3731(d) specifically provides for estoppel in the case of a guilty plea.

The Szilvagyis also argue that the application of collateral estoppel in this case would be unfair, since they attempted to withdraw their guilty pleas and are appealing their convictions. Courts have taken different approaches to statutory estoppel provisions when the underlying conviction has been appealed. In *U.S. v. Coastal Gen. Constr. Serv.*, 299 F. Supp. 2d 483 (D.V.I. 2004), the district court stayed the proceedings of the civil case while the underlying criminal conviction was appealed. *Id.* at 486 n.3.

In contrast, in *U.S. v. St. Luke's Subacute Hosp.*, No. 00-1976, 2004 U.S. Dist. LEXIS 25380 (N.D. Cal. 2004), the district court rejected the defendant's argument that it was unfair to apply collateral estoppel while the underlying conviction was appealed. The court held that:

> While it may be true that an issue of fairness is an important consideration in determining whether to apply the common law doctrine of collateral estoppel offensively against a defendant . . . such concerns are for the most part inapposite to the application of the statutory estoppel provision of the FCA. Because section 3731(d) expressly states that its preclusive effect applies "notwithstanding any other provision of law," the prudential limitations on the common law doctrine do not apply. Thus, absent a degree of unfairness that rises to the level of a due process violation -- which defendants cannot credibly assert here-- the court must interpret section 3731(d) to mean what it says: namely, that a final judgment in any criminal proceeding "shall estop . . . defendant[s] from denying the essential elements" of any offense in a subsequent civil proceeding brought under the FCA and arising out of the same transaction or occurrence.

Id. at *12-13. The court granted summary judgment for the Government based on collateral estoppel. Likewise, in *Leone Industries v. Associated Packaging, Inc.*, 795 F. Supp. 117 (D.N.J. 1992), the district court denied the defendant's motion to stay the civil proceedings while he appealed his criminal conviction, and granted summary judgment for the plaintiff. *Id.* at 118.

The Sixth Circuit has not addressed the issue of how courts should handle the statutory estoppel provision of the FCA when the underlying conviction is being appealed. The Sixth Circuit has taken different approaches towards appeals in the context of common law collateral estoppel.

In *Isibor v. City of Franklin*, 97-5729, 1998 U.S. App. LEXIS 10766 (6th Cir. 1998), the plaintiff was convicted of resisting arrest. The plaintiff appealed his conviction, and also filed a § 1983 action against the officers who arrested him. The defendants argued that they were entitled to summary judgment because of the preclusive effects of the conviction. The Court noted that "a final judgment retains its issue-preclusive effects pending decision of the appeal." *Id.* at *15. However, the Court held that:

> In this case we believe that the prudent course of action is for the district court to retain jurisdiction pending decision by the state appellate court because it is well established that "where the prior judgment, or any part thereof, relied upon by a subsequent court has been reversed, the defense of collateral estoppel evaporates." Consequently, on remand, the district court should retain jurisdiction of the case pending decision by the Tennessee appellate courts. However, we emphasize our conclusion that if the state appellate courts affirm Isibor's conviction, the district court should enter summary judgment in favor of the defendants on Isibor's excessive force claim.

*Id.* at *16-17 (citation omitted).

In *Smith v. SEC*, 129 F.3d 356 (6th Cir. 1997), the plaintiff brought a declaratory judgment action against the SEC regarding the use of certain evidence. The SEC subsequently brought a civil action against plaintiff, and criminal proceedings were initiated as well. The plaintiff was convicted of the criminal charges, and appealed his conviction. The Sixth Circuit vacated an injunction against the civil proceedings, noting that "[i]n order to prevail in the civil action, the SEC now needs only to move for summary judgment on the basis of the collateral estoppel effect of that conviction." *Id.* at 362. The Court further held that "The fact that [the plaintiff] has an appeal of that judgment pending does not deprive the judgment of res judicata effect." *Id.* at 362 n.7.

In the current case, the Court finds that the Szilvagyis' criminal conviction should be given full preclusive effect. 31 U.S.C. § 3731(d) unequivocally states that "a plea of guilty . . . shall estop

6

the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding."

The Szilvagyis argue that a court should not invoke collateral estoppel in "peculiar circumstances." Szilvagyis' Brief at 2 (quoting *Toro v. Gainer*, 370 F. Supp 2d 136, 739 (N.D. Ill. 2005). However, the case cited by the Szilvagyis refers to the Illinois common law of collateral estoppel. The mandatory language of the FCA does not give the Court similar discretion.

The Szilvagyis also argue that it would be a "bitter pill" if the Court granted judgment for Plaintiff, and the Szilvagyis' convictions were subsequently overturned by the Sixth Circuit, leaving the Szilvagyis with an undeserved multi-million dollar liability. Szilvagyis' Brief at 13. However, this would not be the case. The Sixth Circuit has noted that "[a] judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel." *Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1214 (6th Cir. 1989). The Federal Rules of Civil Procedure specifically provide for relief from a judgment when "a prior judgment upon which it is based has been reversed or otherwise vacated." Fed. R. Civ. P. 60(b)(5). Thus, if the Sixth Circuit does reverse the Szilvagyis' convictions, they can move for relief under Rule 60.

However, in the interim Plaintiff is entitled to the collateral estoppel effects of the judgment. The Supreme Court has noted that the trial court should be the "main event" instead of a "tryout on the road." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)). The winner at the trial court level should not have to wait in limbo while the case makes its way through the appellate process. This is especially true in this case, where the amounts in question are substantial. The judge in the Szilvagyis' criminal case, after hearing their

testimony, found that their guilty pleas were "freely and voluntarily entered." Plaintiff's Exh. 1 at 17, 29. After hearing further testimony, the judge denied the Szilvagyis' requests to withdraw their guilty pleas. Plaintiff is entitled to the full preclusive effect of that judgment.

### 2. *The Extent of Collateral Estoppel*

The Szilvagyis also argue that "a plea of guilty in a conspiracy to commit an offense or to defraud the United States does not amount to a guilty plea as to all substantial allegations incorporated in that account, but only establishes liability for conspiracy." Szilvagyis' Brief at 5. The argument is not developed further, but presumably the Szilvagyis are claiming that their guilty pleas to conspiracy do not estop them from denying presenting false claims (Count I) and making false records (Count II). The Court finds this argument unpersuasive.

It is true courts have held that "the entry of a plea of guilty on a count for conspiracy does not determine which of the particular means charged in the indictment were used to effectuate the conspiracy." *U.S. v. Guzzone*, 273 F.2d 121, 123 (2d Cir. 1959). In addition, "a conspiracy to commit a crime is a distinct offense from the commission of the crime. This is so even if commission of the crime is listed as an overt act in the conspiracy count." *U.S. v. Frazier*, 880 F.2d 878, 884 (6th Cir. 1989). However, it is also true that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt." *U.S. v. Broce*, 488 U.S. 563, 569 (1989). This principle is reflected in the language of § 3731(d), which estops the defendant from "denying the essential elements of the offense" to which he pled guilty. The question, then, is whether the essential elements of the crime to which the Szilvagyis pled guilty are sufficient to establish liability for each of the three counts currently at issue.

8

The Szilvagyis pled guilty to the charge of Conspiracy to Commit Health Care Fraud and Mail Fraud in violation of 18 U.S.C. §§ 371, 1341, and 1347. The essential elements of conspiracy under § 371 are:

> (1) the conspiracy described in the indictment was wilfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one overt act charged in the indictment at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.

*U.S. v. Kraig*, 99 F.3d 1361, 1368 (6th Cir. 1996).

Count III of the current suit charges the Szilvagyis and Prime Care with conspiracy to present a false claim, in violation of 31 U.S.C. § 3729(a)(3). To establish a conspiracy under § 3729(a) the plaintiff must show that the defendant conspired with one or more persons to get a false claim paid, and an overt act was performed in furtherance of the conspiracy. *U.S. ex rel. Sanders v. Allison Engine Co.*, 364 F. Supp. 2d 713, 714 (S.D. Oh. 2003) (citing *U.S. v. Murphy*, 937 F.2d 1032 (6th Cir. 1991)). Clearly, the elements of the offense that the Szilvagyis and Prime Care pled guilty to, Conspiracy to Commit Health Care Fraud and Mail Fraud, encompass the elements of conspiracy under § 3729(a)(3). Thus, the Szilvagyis are estopped from denying liability for Count III.

Count I charges the Szilvagyis and Prime Care with presenting a false claim in violation of § 3729(a)(1). § 3729(a)(1) prescribes liability for anyone who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." As discussed above, the conspiracy charge the Szilvagyis pled guilty to requires an overt act performed in furtherance of the conspiracy. Rule 11 requires the court to determine the factual basis of a guilty plea before accepting it. Fed. R. Crim. P. 11(b)(3). Therefore, we must look at the plea proceedings

to determine the overt acts admitted by the Szilvagyis to support their guilty pleas.

> The following exchange took place during the plea proceeding of David Szilvagyi:
>
> THE COURT: But you intended – I'm not trying to put words in your mouth. I'm just trying to get this thing out. It's harder than I thought it would be. You knew that the cost reports for this period of construction were not accurate of the cost of running the business, that they also included the cost of making this home, correct?
>
> DEFENDANT DAVID SZILVAGYI: Yes, Your Honor.
>
> THE COURT: Did you intend that?
>
> DEFENDANT DAVID SZILVAGYI: That was based on out accountant's preparing the cost report, yes, Your Honor.
>
> THE COURT: Well, it's not your accountant that's here. It's you that's here, and that's why I'm asking. Did you intend that to be the case?
>
> DEFENDANT [DAVID] SZILVAGYI: Yes, Your Honor.

Plaintiff's Exh. 1 at 15.

> The following exchange took place during the plea proceeding of Elena Szilvagyi:
>
> THE COURT: Did you intend – this is the ultimate question here. Did you intend to pass these costs of construction of your residence on through Prime Care to ultimately Blue Cross/Blue Shield and Medicare?
>
> DEFENDANT ELENA SZILVAGYI: Yes, Your Honor.
>
> THE COURT: I'm sorry?
>
> DEFENDANT ELENA SZILVAGYI: Yes, Your Honor.
>
> THE COURT: Did you pass them on in such a manner that they were contained in the cost reports of that corporation?
>
> DEFENDANT ELENA SZILVAGYI: Yes, Your Honor.

Plaintiff's Exh. 1 at 28.

Both David and Elena Szilvagyi admitted, as part of the factual basis of their guilty pleas,

that they intended for the cost reports submitted to Medicare to contain illegitimate costs for the construction of their home. Since they intended the false claims to be submitted, they knowingly caused a false claim to be presented in violation of 31 U.S.C. § 3729(a)(1). They are thus estopped from denying liability for Count I.

Count II charges the Szilvagyis and Prime care with making a false record. 31 U.S.C. § 3729(a)(2) prescribes liability for anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." The false record in this case is the Prime Care payroll that included individuals who were performing personal services for the Szilvagyis. Since, as discussed above, the Szilvagyis intended to pass the costs of the construction of their home on to Medicare, they necessarily caused the false record to be made. Thus, they are estopped from denying liability for Count II.

**B.      Damages under the False Claims Act**

The False Claims Act provides that persons violating the Act are "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(7). After their convictions, the Szilvagyis and Prime Care were ordered to pay restitution. 18 U.S.C. § 3664 requires the court to determine the total amount of the victim's loss when ordering restitution. The court found the total loss suffered by Medicare to be $836,324. Thus, in the current case Plaintiff is entitled to treble damages of $2,508,972.

Plaintiff also requests $10,000 for each of the four false statements, for a total of $40,000. The Court finds that the Szilvagyis admitted to make four false statements in their plea proceedings. Plaintiff's Exh. 1 at 16, 25-26. However, Plaintiff has provided no reasons as to why the statutory

11

maximum of $10,000 per false statement should be awarded. *See U.S. ex rel. Augustine v. Century Health Servs.*, 136 F. Supp. 2d 876, 895 (M.D. Tenn. 2000). Therefore, the Court will award Plaintiff $5,000 for each false statement, for a total of $20,000. Plaintiff is awarded a total amount of $2,528,972 ($2,508,972 + $20,000).

## V. CONCLUSION

Accordingly, for the reasons set forth above, Plaintiff's Motion for Summary Judgment is hereby GRANTED IN PART. The Court finds that the Szilvagyis and Prime Care are liable under Counts I, II, and III. Plaintiff is entitled to $2,528,972 in damages; the Szilvagyis and Prime Care are jointly and severally liable for that amount.

IT IS SO ORDERED.

                                                    s/Lawrence P. Zatkoff
                                                    LAWRENCE P. ZATKOFF
                                                    UNITED STATES DISTRICT JUDGE

Dated:  October 25, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 25, 2005.

                                                        s/Marie E. Verlinde  
                                                        Case Manager  
                                                        (810) 984-3290